## WINKLEY v. COGSWELL.

Court of Appeals of District of Columbia.
Submitted March 18, 1927. Decided
May 2, 1927.

No. 1946.

1. Patents ⬡═90(5)—Junior party to interference proceeding involving invention of machinery held entitled to priority on establishing actual reduction to practice prior to senior party's filing date.

Junior party to patent interference proceeding involving invention of shoe-manufacturing machinery having automatic mechanism for manipulating blanks held entitled to priority, on showing of actual reduction to practice and successful operation before senior party's filing date fixing time of constructive reduction to practice.

2. Patents ⬡═90(5)—Commercial test is not necessary to constitute a "reduction to practice."

It is well settled that a commercial test is not necessary to constitute a reduction to practice.

Appeal from Commissioner of Patents.

Patent interference proceeding between Erastus E. Winkley and Leander A. Cogswell. From a decision of the Commissioner of Patents for the latter, the former appeals. Affirmed.

A. D. Salinger, of Boston, Mass., and H. A. Dodge, of Washington, D. C., for appellant.

Robert Cushman, of Boston, Mass., and A. V. Cushman, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. Appeal from an order of priority in an interference proceeding.

As aptly described in the opinion of the Examiner of Interferences: "The invention here in controversy relates to shoe-manufacturing machinery, and deals with automatic mechanism for manipulating blanks that are finally assembled to form completed shoes. The feature in controversy includes a distributor chute controlled by a detecting device; the latter being used to determine the thickness of different blanks. Having determined the thickness of a certain blank, the distributor chute is set to discharge the blank into the proper receptacle. Furthermore, the machine is arranged so that a succeeding blank may enter the detecting mechanism before the blank in advance has left the distributor."

The interference contains 36 counts. The present appeal relates to counts 1 to 14 and 24 to 36, which are those relating particularly to the sorting and distributing device included within the described machinery. Count 1, which is sufficiently illustrative, reads as follows:

"1. A blank-sorting machine having, in combination, means for measuring a blank, and spring-actuated means automatically responsive to said measuring means for causing the blank to be delivered in accordance with its measurements."

Both parties are applicants; both have taken testimony and filed exhibits.

Winkley, the senior party, filed on August 20, 1918, alleging conception on August 29, 1916, not attempting, however, to establish an actual reduction to practice, nor to show a commercial use of the invention. Constructive reduction to practice is fixed by his filing date.

Cogswell, the junior party, filed on August 20, 1921, alleging conception on April 3, 1917, and an actual reduction to practice in February, 1918, by the construction and successful operation of a machine which fully embodied the invention.

[1] The decisive question in the case is that raised by Cogswell's claim of an actual reduction to practice in February, 1918. This is disputed by Winkley, and it is plain that Cogswell is entitled to an award of priority if he has proven an actual reduction to practice as claimed by him.

Upon this issue the Examiner of Interferences held with Cogswell, and awarded priority to him. This decision was reversed by the Board of Examiners in Chief, but upon appeal the decision of the board was reversed by the Commissioner of Patents, who awarded priority to Cogswell. This appeal was then taken.

Upon a review of the record we agree with the Commissioner's decision. It appears from Cogswell's testimony that in the year 1903 he became the manager of the Lacene Manufacturing Company, of Manchester, N. H., manufacturers of shoe machinery for evening and grading soles, top lifts, and other parts of shoe bottoms; that he continued in that employment up to and since the filing of his application; that while so employed he had oversight of the manufacturing and of the improvement and invention of machinery; that he first conceived the invention in April, 1917; that early in the year 1918 he constructed a distributing machine similar to the drawings of his application; that the machine so constructed was operated under power at the factory with 200 top lifts as material, pur-

chased in February, 1918, for this purpose, at the Griffin shoe factory; that the test was witnessed by Mills and Johnston, who were employees of the company skilled in such machinery; that the machine operated successfully; that no alterations were required, except the use of a stronger actuating spring and a lighter chute, to respond better to high speeds, and other minor changes, which required only mechanical skill and knowledge to make; that the tests were made at the Lacene factory before its removal to its new quarters, which removal took place not later than April, 1918. It appears, also, that Cogswell afterwards proceeded with the manufacture and commercial use of the machine.

Cogswell's testimony was corroborated by that of Mills and Johnston, and by various contemporaneous writings and entries, and the machine in question and also the substituted parts were used as exhibits. No testimony was introduced by Winkley directly contradicting any of the foregoing statements.

In our opinion the record entitles Cogswell to the award of priority. There can be no question as to the time when the tests of the machine were made. Moreover, the tests were sufficient to demonstrate the practicability of the invention. Burson v. Vogel, 29 App. D. C. 388; Pool v. Dunn, 34 App. D. C. 132; Putman v. Wetmore, 39 App. D. C. 138. This conclusion is not negatived by defects existing at the time of the tests which could be cured by exercise of ordinary mechanical skill. Howard v. Bowes, 31 App. D. C. 619; Cheatham v. Collins, 43 App. D. C. 16.

[2] It is also well settled that a commercial test is not necessary to constitute a reduction to practice. Sanders v. Emerson, 37 App. D. C. 598. See, also, Seeberger v. Russel, 26 App. D. C. 344; Boynton v. Taggart, 40 App. D. C. 82; Hopkins v. Peters, 41 App. D. C. 302.

The decision of the Commissioner of Patents is affirmed.